# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**FILED**

September 22, 2017
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**MECHEL BLUESTONE, INC.,**
**Employer Below, Petitioner**

**vs.)    No. 17-0019** (BOR Appeal No. 2051387)
                        (Claim No. 2014002989)

**CARL E. NUCKOLLS,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Mechel Bluestone, Inc., by Timothy E. Huffman, its attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Carl E. Nuckolls, by Reginald D. Henry, his attorney, filed a timely response.

The issue on appeal is whether cervical intervertebral disc syndrome is a compensable condition of the claim and whether a cervical MRI is medically related and reasonably required for the compensable injury. The claims administrator denied the request for a cervical MRI on April 2, 2015. The claims administrator denied the request to add cervical intervertebral disc syndrome as a compensable diagnosis in the claim on August 5, 2015. The Office of Judges affirmed the claims administrator's decisions on June 21, 2016. The Board of Review reversed the Order of the Office of Judges on December 8, 2016. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Nuckolls, a coal miner for Mechel Bluestone, Inc., injured his back in a rock fall that occurred at work on July 24, 2013. On July 26, 2013, Mr. Nuckolls sought treatment for complains pain in his lumbar spine and shoulders at Princeton Community Hospital and was

1

diagnosed with a back sprain. A physical examination was described as normal, although Ms. Nuckolls exhibited bruising and muscle spasm. He underwent an x-ray examination of his thoracic spine, which was interpreted as revealing a normal vertebral alignment without fracture, abnormal subluxation, or degenerative changes. A similar examination of his lumbar spine yielded the same result. A report of injury was filed alleging a back strain.

On August 7, 2013, the claims administrator held the compensable under the diagnoses of thoracic sprain/strain and sacroiliac region, sprain/strain. A second report of injury filed on August 12, 2013, alleges that he sustained injury to both his upper and lower back. Mr. Nuckolls continued to suffer pain and sought treatment from Rocky Sexton, M.D., who diagnosed Mr. Nuckolls as suffering from a sprain/strain injury to the upper and lower back. On September 9, 2013, Mr. Nuckolls underwent a thoracic spine MRI at Raleigh General Hospital, which was interpreted as revealing a shallow disc protrusion at T6-7 and right paracentral disc protrusion at T7-8. The thoracic MRI was negative for fracture or subluxation. On September 18, 2013, Mr. Nuckolls underwent an MRI of the cervical spine, which was interpreted as revealing a large left paracentral and foraminal disc protrusion at C6-7 and facet arthropathy at C4-5 on the right and early foraminal narrowing. The following day, Mr. Nuckolls underwent an MRI of the thoracic spine, which was interpreted as revealing a shallow disc protrusion at T6-7, right paracentral disc protrusion at T7-8, and facet arthropthy at T9-10 and T10-11.

On September 23, 2013, Dr. Sexton completed a diagnosis update requesting to add thoracic sprain, thoracic intervertebral disc syndrome, and cervical intervertebral disc syndrome as compensable diagnoses under this claim. He referred to the cervical spine MRI report and Mr. Nuckolls's numbness in his left fingers, which correlated with a large left C6-7 herniation. Dr. Sexton requested a pre-authorization for Mr. Nuckolls to receive a consultation with Rajesh Patel, M.D., an orthopedic surgeon. Attached to the request were an office visit note and the diagnosis update. The claims administrator referred the issue regarding the diagnosis update to James Dauphin, M.D., who issued a report on September 27, 2013, that there was no evidence that Mr. Nuckolls had sustained a cervical spine injury in this claim noting that his first three weeks of treatment made no mention of any cervical spine injury or disc syndrome. He recommended against the inclusion of the diagnosis.

On September 30, 2013, Prasadarao Mukkamala, M.D., was asked to opine about the requested diagnoses. Dr. Mukkamala noted that the x-ray examination of Mr. Nuckolls's lumbar and dorsal spine failed to reveal fractures or dislocations and that Mr. Nuckolls had been diagnosed with low back strain and thoracic strain. He acknowledged that the MRI of Mr. Nuckolls's thoracic spine revealed shallow disc protrusions at multiple levels. He concluded that Mr. Nuckolls had not sustained an injury to his cervical spine on July 24, 2013. He further concluded that the disc protrusions at T6-7 and T7-8 were pre-existing and not causally related to Mr. Nuckolls's compensable injury. He recommended against the inclusion of the diagnoses and the referral to Dr. Patel.

Joseph E. Grady, M.D., performed an independent medical evaluation of Mr. Nuckolls on November 18, 2013. Dr. Grady indicated that he had performed a physical examination of Mr. Nuckolls and reviewed his clinical history. He performed a range of motion study on Mr.

2

Nuckolls's thoracic spine and diagnosed Mr. Nuckolls as suffering from thoracic sprain superimposed on multilevel degenerative changes and lumbosacral myofascial sprain. He concluded that Mr. Nuckolls had reached his maximum degree of medical improvement and suffered from no ratable whole person impairment.

On January 7, 2014, the StreetSelect Grievance Board issued a determination recommending a referral of Mr. Nuckolls to Rajesh Patel, M.D., to evaluate the cervical spine and to determine any relationship between Mr. Nuckolls's complaints and the compensable injury. The StreetSelect Grievance Board recommended against the inclusion of the diagnosis of thoracic intervertebral disc syndrome. The claims administrator subsequently approved the request for consultation with Dr. Patel on January 17, 2014. On February 4, 2014, Dr. Sexton authored correspondence disputing that thoracic intervertebral disc syndrome should not be included as compensable under this claim. He referred to the findings contained in the thoracic spine MRI dated September 9, 2013, and indicated that he had made his request for a diagnosis update based upon the same.

Dr. Patel performed a physical examination of Mr. Nuckolls on February 5, 2014, and diagnosed him as suffering from cervical sprain, thoracic sprain, lumbar sprain, cervical radiculitis, cervical disc herniation at left C6-7, thoracic disc bulging, cervical disc bulging, and cervical radiculopathy at left C6-7. On March 18, 2014, Mr. Nuckolls was deposed. He described the mechanism of injury and discussed his course of treatment. He indicated that his lower back and neck continued to hurt and he experienced numbness in his left hand.

Mr. Nuckolls underwent a nerve conduction study performed by Barry Vaught, M.D., on March 20, 2014. Dr. Vaught interpreted the study as being abnormal, indicating that there was electrophysiologic evidence for an active C6-7 radiculopathy on the left. On April 9, 2014, Dr. Patel saw Mr. Nuckolls regarding his lower back. Dr. Patel examined Mr. Nuckolls and diagnosed cervical radiculopathy, left C6-7; cervical disc herniation, left C6-7; cervicalgia; and cervical sprain. Dr. Patel noted that Mr. Nuckolls had nerve root impingement and disc herniation to account for his arm pain. He requested a repeat cervical spine MRI to see if the disc herniation was still there. If the herniation was still present, Dr. Patel recommended proceeding with a discectomy at C6-7 to free up the nerve and hopefully help Mr. Nuckolls with his arm pain. In an April 19, 2014, letter, Dr. Sexton reiterated his opinion that based upon diagnostic testing, Mr. Nuckolls had sustained thoracic and cervical intervertebral disc syndrome attributable to the compensable injury.

On June 25, 2014, Mr. Nuckolls was examined by Dr. Patel regarding his lower back and legs. Mr. Nuckolls reported that he was having severe pain in his neck, arm, and lower back into his legs. He reported that sitting and bending aggravated his pain and lying down gave him relief. He reported that ice made his pain better, but physical therapy made it worse. Dr. Patel requested an MRI and authorization for injections for Mr. Nuckolls's lower back. Dr. Patel recommended a lumbar brace and prescribed Flexeril for Mr. Nuckolls. Mr. Nuckolls was seen by Dr. Patel in February of the following year again regarding his neck and arms. He had reported severe pain in his neck and left arm together with his lower back and leg. Dr. Patel's assessment was foraminal protrusion, right L4-5; annular tear, L4-5; cervical sprain; lumbar sprain; cervical disc herniation,

C6-7; and left C6-7 radiculopathy. Dr. Patel requested a cervical MRI. He stated that surgery was indicated at this point as Mr. Nuckolls had not received much relief with therapy.

On April 2, 2014, the Office of Judges added thoracic intervertebral disc syndrome as a compensable diagnosis. On the same day, the claims administrator denied the request for a cervical MRI. Mr. Nuckolls was subsequently seen by Dr. Patel regarding his neck and back. Mr. Nuckolls reported that he was getting worse. The pain was moderate to severe. Everything Mr. Nuckolls did aggravated his pain and nothing provided him relief. Dr. Patel stated that at Mr. Nuckolls's age, he would not expect disc degeneration or herniation and would attribute any herniation to an injury. He felt that an MRI would be indicated and thought that surgery would also be indicated.

On May 26, 2015, Mr. Nuckolls underwent an independent medical evaluation by Dr. Grady for the allowed conditions of displacement of thoracic intervertebral disc without myelopathy, thoracic sprain, and unspecified site of sacroiliac region sprain. Dr. Grady reviewed Mr. Nuckolls's medical records and performed a physical examination. His assessment was resolved thoracic sprain with thoracic intervertebral disc displacement on MRI. Dr. Grady noted that Mr. Nuckolls reported symptoms involving the upper and lower extremities but believed that they were unrelated to Mr. Nuckolls's thoracic spine area.

Dr. Mukkamala indicated in a report dated June 22, 2015, that he had reviewed additional documents provided to him by the employer in addition to the remainder of the file. He concluded that Mr. Nuckolls's cervical condition should not be held compensable in this claim. Dr. Mukkamala stated that Mr. Nuckolls was injured when a rock fell on him. Dr. Mukkamala stated that Mr. Nuckolls pointed to his mid-back as the site where the rock had struck him. Mr. Nuckolls reported to the emergency room that he had lumbar pain together with pain between the shoulders. On June 22, 2015, Randall L. Short, D.O., reviewed the claim to determine if the cervical spine should be held compensable. He noted that the acceptable diagnoses included sacroiliac sprain/strain, thoracic sprain/strain, and displacement of intervertebral thoracic disc. After reviewing the file, he opined that Mr. Nuckolls's cervical spine should not be included as a compensable injury in this claim. He noted that the Employees' Report of Mine Incident form included only his back and mid-back. During his initial visit to Dr. Sexton, there was no mention of the cervical spine under either complaint or diagnosis.

The claims administrator denied the request for the addition of cervical intervertebral disc syndrome to the claim on June 29, 2015. On July 28, 2015, the StreetSelect Grievance Board issued a determination finding that there was no basis for a repeat MRI for a condition which had been denied in this claim. On August 5, 2015, the claims administrator denied the request to add cervical intervertebral disc syndrome as a compensable diagnosis based on the StreetSelect Grievance Board's findings.

Mr. Nuckolls was seen by Dr. Patel on September 28, 2015, regarding his back and neck. Dr. Patel noted that Mr. Nuckolls was getting worse as time progressed. He was still having trouble with pain in his neck and arm. Dr. Patel diagnosed an annular tear at L4-5, lumbar disc bulging at right L4-5, lumbar sprain, lumbar radiculitis, cervical sprain, cervical disc herniation,

and left C6-7 radiculopathy. Dr. Patel noted that Mr. Nuckolls's EMG showed an active radiculopathy and an MRI showed pathology at C6-7. He indicated that a new MRI of the cervical spine would be helpful. Dr. Patel thought surgical intervention would be a reasonable option for his neck and arm pain. Mr. Nuckolls reported he had a new low back injury in August of 2015. Dr. Patel stated that a new MRI of Mr. Nuckolls's lumbar spine would be helpful to differentiate and to see if there was any new pathology.

On November 3, 2015, Paul Bachwitt, M.D., performed an independent medical evaluation. Dr. Bachwitt indicated that he had reviewed the clinical history and performed a physical examination of Mr. Nuckolls. Dr. Bachwitt was of the opinion that Mr. Nuckolls's cervical spine was not part of the original injury of July 24, 2013, noting that Mr. Nuckolls had no complaints regarding this body part at the time of the injury. On July 24, 2013, Mr. Nuckolls complained of lumbar pain and pain between his shoulders. It was noted that x-rays were taken of the dorsal spine and the lumbar spine. The cervical spine was not x-rayed as there were no complaints regarding the cervical spine and the physical examination was normal.

Mr. Nuckolls testified on December 14, 2015. He stated that on the date of injury, a rock fall hit him between the shoulders and the back of the head throwing off his helmet in the process. The rocks were so heavy it took a fulcrum bar to remove them. Nevertheless, he finished his shift and thereafter sought treatment at Princeton Community Hospital where x-rays were taken of his mid back and lower back. He testified he had a scrape on the back of his head. Mr. Nuckolls testified that he sought treatment from Dr. Sexton about two weeks after the injury because his neck continued hurting and his left hand was going numb. He represented that he had no problems with his hand prior to the injury. Mr. Nuckolls testified that when he filed his application for benefits, his back and shoulders bothered him the most. He did not notice that his neck was bothering him. He testified that his neck stayed sore and his head was pulling to the left side of his shoulder with his hand feeling numb. He testified that he had numbness in his thumb, index finger, and middle finger of the left hand. He testified that he had not experienced any slip or fall injuries since the compensable injury. On April 18, 2016, Dr. Mukkamala reviewed Mr. Nuckolls's records as provided by the employer. He listed the diagnoses as thoracic sprain/strain and sacroiliac sprain/strain. After reviewing the records, it was his professional opinion that all of his opinions expressed at the time of his prior evaluations remained the same.

On June 21, 2016, the Office of Judges determined that cervical intervertebral disc syndrome was not a compensable component of the claim. Dr. Sexton diagnosed Mr. Nuckolls as suffering from sprain/strain injuries to his upper and lower back. Treatment notes from Dr. Sexton's office dated August 12, 2013, reflected that Dr. Sexton had examined Mr. Nuckolls's cervical region and indicated that all of his testing was negative except for foraminal compression, shoulder depression, and cervical distraction. The Office of Judges concluded that Mr. Nuckolls's cervical spine did not present as an issue until September 18, 2013, when he underwent a cervical MRI. Several doctors opined about the inclusion of cervical intervertebral disc syndrome. Drs. Dauphin, Mukkamala, and Short concluded that the cervical intervertebral disc syndrome should not be included in the claim because Mr. Nuckolls did not complain fo neck pain for some time after the compensable injury. Drs. Sexton and Patel believed that the cervical intervertebral disc syndrome was caused by the compensable injury. The Office of

Judges concluded that the medical evidence was roughly evenly divided between Mr. Nuckolls's treating physicians and the employer's evaluators. The Office of Judges believed that the problem with including the cervical spine as a compensable component in this claim related primarily to the loose ends created by Mr. Nuckolls's apparent compensable injury of March 23, 2013, involving his neck with little documentation and the relatively obvious fact that Mr. Nuckolls waited for approximately five weeks after the compensable injury before he received any treatment with regard to his cervical spine. Therefore, the Office of Judges concluded that Mr. Nuckolls failed to meet his burden of proof to show that cervical intervertebral disc syndrome was a compensable condition. As a result, the Office of Judges also denied the cervical MRI.

The Board of Review adopted the findings of the Office of Judges but concluded the Office of Judges was clearly wrong in its analysis and conclusion. The Board of Review found that Mr. Nuckolls's deposition testimony was persuasive. He stated that the rock fall hit him between the shoulders and the back of the head throwing off his helmet in the process. The rocks were so heavy it took a fulcrum bar to remove them. In addition, the Board of Review highlighted that an MRI taken after the injury revealed a large left C6-7 herniation, which correlated with his numbness complains. The Board of Review noted that Dr. Sexton has been treating Mr. Nuckolls for many years and is more acquainted with Mr. Nuckolls's physical condition than any other physician of record. Dr. Sexton found that the cervical intervertebral disc syndrome was caused by the compensable injury. The Board of Review concluded that cervical intervertebral disc syndrome should be added as a compensable component of the claim. Because the Board of Review found cervical intervertebral disc syndrome was a compensable component of the claim, it also concluded the cervical MRI should be approved. After review, we agree with the Board of Review.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED:  September 22, 2017**


**CONCURRED IN BY:**
Chief Justice Allen H. Loughry II
Justice Robin J. Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

6